MORRISON v RICHERSON

Docket No. 126171. Submitted May 20, 1992, at Lansing. Decided
November 9, 1992; approved for publication February 3, 1993,
at 9:00 A.M.

Phyllis Morrison brought an action in October 1980 in the
Saginaw Circuit Court against Michael P. Richerson, seeking
an order of filiation, child support, and maintenance with
regard to her minor son. In November 1981, the parties
reached an agreement whereby the defendant acknowledged
paternity and agreed to pay $10 a week child support. The
settlement agreement contained a provision that the defen-
dant's total child support payment would not exceed $5,000.
The court, Fred J. Borchard, J., entered an order requiring the
defendant to pay $10 a week child support until the child was
eighteen or until further order of the court, but did not incor-
porate the $5,000 maximum child support provision from the
settlement agreement. In 1987, the plaintiff sought an order of
income withholding, and the friend of the court sought an
increase in child support. The action was brought by the county
prosecuting attorney because the plaintiff, who was a recipient
of aid to families with dependent children benefits in October
1980 and in 1987, had assigned to the state her right to the
defendant's past-due obligation. The court, Lynda L. Heath-
scott, J., granted the petition to increase child support. The
defendant appealed.

The Court of Appeals *held:*

1. The circuit court did not lack jurisdiction with regard to
this action, and venue was proper in Saginaw County.

2. The $5,000 maximum support provision of the settlement
agreement did not bar an increase in child support. The trial
court did not approve the $5,000 maximum provision in the
settlement agreement, and the court's order contemplated mod-
ification of the defendant's obligations.

3. The trial court properly exercised its discretion in award-
ing a retroactive increase in child support. Resolution of the

REFERENCES

Am Jur 2d, Bastards §§ 67 *et seq.*
See ALR Index under Legitimacy of Children.

petition for an increase was delayed as a result of adjournments obtained by the defendant without the plaintiff's consent.

4. Once the friend of the court determined that the child was being supported by public assistance and that the child support order had not been fully satisfied, it was obligated by statute to investigate the defendant's financial conditions, and, upon finding changed financial conditions, to petition for modification.

5. The prosecuting attorney was required to represent the complainant in the action under the Paternity Act once the county department of social services determined her to be eligible for public assistance. In addition, because the complainant assigned her rights to the past-due child support to the state, the prosecuting attorney properly could represent her.

Affirmed.

1. PARENT AND CHILD — CHILDREN BORN OUT OF WEDLOCK — PATERNITY ACTIONS — CIRCUIT COURTS — CHILD SUPPORT.

The circuit court has subject-matter jurisdiction of an action to identify the father of a child born out of wedlock; until a judgment entered in an action has been completely satisfied, the court has continuing jurisdiction over proceedings under the Paternity Act to modify the amount of child support fixed by the order of filiation (MCL 722.714, 722.720[1]; MSA 25.494, 25.500[1]).

2. PARENT AND CHILD — PATERNITY ACTIONS — VENUE.

Venue in actions under the Paternity Act is not jurisdictional (MCL 722.714[1]; MSA 25.494[1]).

3. PARENT AND CHILD — PATERNITY ACTIONS — COMPROMISE AGREEMENTS.

A parent in a paternity action cannot release or compromise a child's claim of its inherent right to parental support; the Paternity Act permits a compromise agreement in lieu of a filiation order only when the court having jurisdiction to compel support and education of the child has determined that adequate provision is reasonably secured by payment or otherwise and has approved the agreement or compromise (MCL 722.713[a]; MSA 25.493[a]).

4. PARENT AND CHILD — CHILD SUPPORT — MODIFICATION OF CHILD SUPPORT.

The fact that a party caused delay in the resolution of a petition for an increase in child support is an important factor in determining the date on which any increased level of child support to be paid by the party becomes effective.

5. PARENT AND CHILD — CHILD SUPPORT — PUBLIC ASSISTANCE —
   FRIEND OF THE COURT — MODIFICATION OF CHILD SUPPORT.
   Once the friend of the court determines that a child who is the
   subject of a child support order is being supported by public
   assistance and that the order has not been fully satisfied, it
   must investigate the supporting party's financial conditions,
   and, upon finding changed conditions, petition for a modifica-
   tion of support (MCL 552.517; MSA 25.176[17]).

6. PROSECUTING ATTORNEYS — PARENT AND CHILD — CHILD SUPPORT
   — PATERNITY ACT — PUBLIC ASSISTANCE.
   The prosecuting attorney of the county in which a complainant
   mother resides must represent the mother in initiating and
   conducting proceedings under the Paternity Act following the
   county department of social services' determination that the
   mother is eligible for public assistance; furthermore, the prose-
   cuting attorney may represent a complainant in an action
   under the Paternity Act seeking past-due child support where
   the complainant assigns her right to the past-due child support
   to the state (MCL 722.714[3]; MSA 25.494[3]).

*Michael D. Thomas,* Prosecuting Attorney, and
*Terry R. Manwell,* Assistant Prosecuting Attorney,
for the plaintiff.

*Roger J. Oeming,* for the defendant.

Before: DOCTOROFF, C.J., and JANSEN and CORRI-
GAN, JJ.

PER CURIAM. Defendant appeals from an order
of the Saginaw Circuit Court requiring him to pay
child support. We affirm.

Plaintiff's son was born in 1978. In October
1980, plaintiff, then a recipient of aid to families
with dependent children (AFDC) benefits, sought an
order of filiation, child support, and maintenance
against defendant pursuant to the Paternity Act,
MCL 722.712; MSA 25.492. The complaint listed
plaintiff's address in Saginaw. At a hearing nearly
nine years later, she first testified that when the
complaint was filed she was living in Tuscola
County.

Defendant initially denied paternity. In November 1981, the parties reached a compromise agreement. Defendant signed a standard, preprinted "Acknowledgment of Paternity and Waiver of Rights," agreeing to pay $10 a week child support. The document also included a handwritten addition, "TOTAL PAYMENT NOT TO EXCEED $5000.00." The court order required defendant to pay $10 a week until the child was eighteen "and/or the further Order of the Court," but failed to incorporate the $5,000 maximum child support provision from the settlement agreement. The discrepancy between the agreement and the order was not timely raised, and the order became final.

The parties did not return to court until 1987, when plaintiff, again an AFDC recipient, sought an order of income withholding. The friend of the court then sought to increase child support to $103 a week. The court rejected the referee's recommendation to deny the petition on the basis of the agreement:

> The Defendant . . . having signed an Acknowledgment of Paternity and the Court having entered an Order of filiation and there being no indication from the court records that the Court approved a Compromise Settlement of the parties concerning child support, nor are there any findings by the Court that the alleged Settlement makes adequate provision for the support and education of the child of the parties in accordance with [MCL 722.713;] MSA 25.493, therefore, the case will be remanded to the Referee for a determination of support for the minor child.

At the hearing, defendant, despite a subpoena, failed to produce his financial records and refused to testify on the advice of counsel. After a hearing de novo at which defendant testified as an adverse

witness, the court granted the petition to increase child support.

## I. JURISDICTION AND VENUE

Defendant asserts that the circuit court lacked jurisdiction or that venue was improperly laid in Saginaw County. We disagree.

The circuit court had subject-matter jurisdiction over the paternity question. At the time of the complaint, MCL 722.714(c); MSA 25.494(c) provided:

> The complaint shall be made to, and for the purpose of this act *jurisdiction is conferred upon the circuit court.* [Emphasis supplied.]

The circuit court has subject-matter jurisdiction over an action to identify the father of a child born out of wedlock. *Syrkowski v Appleyard,* 420 Mich 367, 375; 362 NW2d 211 (1985). Until the judgment has been completely satisfied, the court has continuing jurisdiction over proceedings under the Paternity Act to increase or decrease the amount of child support fixed by the order of filiation. MCL 722.720(1); MSA 25.500(1). *Bessmertnaja v Schwager,* 191 Mich App 151, 156; 477 NW2d 126 (1991).

Defendant also claims that venue in Saginaw County was improper in 1981. We disagree. MCR 2.221 requires a motion for a change of venue "before or at the time the defendant files an answer," unless "the facts on which the motion is based were not and could not with reasonable diligence have been known to the moving party more than 14 days before the motion was filed." The venue issue was first raised 8½ years too late. Plaintiff's allegedly improper residence could with

reasonable diligence have been known within the court rule's time constraints. We could thus appropriately hold that the venue issue has been waived. MCR 2.221(C).

Even if the objection to venue was timely, it would not dispose of the matter. Venue in actions under the Paternity Act, MCL 722.714(1); MSA 25.494(1), is not jurisdictional. Although noncompliance with a statutory requirement voids jurisdiction in a *divorce* action, *Stamadianos v Stamadianos,* 425 Mich 1, 3; 385 NW2d 604 (1986), paternity cases are distinguishable. The language in the divorce and paternity statutes is significantly different.

MCL 552.9; MSA 25.89, relating to divorce actions, provides:

> (1) *A judgment of divorce shall not be granted* by a court in this state in an action for divorce *unless the complainant or defendant has resided in this state for 180 days* immediately preceding the filing of the complaint *and,* except as otherwise provided in subsection (2), *the complainant or defendant has resided in the county in which the complaint is filed for 10 days immediately preceding the filing of the complaint.* [Emphasis supplied.]

By contrast, MCL 722.714(1); MSA 25.494(1) reads:

> A proceeding in accordance with this act shall be brought by the mother, the father, or the department of social services as provided in this act. *Complaints shall be made in the county where the mother and child or 1 of them reside.* If both the mother and child reside outside this state, then the complaint shall be made in the county where the putative father resides or is found. The fact that the child was conceived or born outside of

this state shall not be a bar to entering a complaint against the putative father. [Emphasis supplied.]

The divorce statute's language plainly limits the power of the court: "A judgment of divorce *shall not be granted . . . unless the complainant or defendant has resided in this state for 180 days.*" (Emphasis supplied.) A divorce judgment in an action where the residency requirement is not satisfied is void.

The Paternity Act provision does not limit the court's power to enter judgments; it directs where the complaint is to be filed. "Complaints *shall be made* in the county where the mother and child or 1 of them reside." (Emphasis supplied). The statute does not provide a jurisdiction-stripping consequence for misfiled complaints.

The language of MCL 722.714(1); MSA 25.494(1) is similar to MCL 722.26; MSA 25.312(6), relating to child custody. Section 6 provides, "[I]f the circuit court of this state does not have prior continuing jurisdiction over the custody of a child, *the action shall be submitted to the circuit court of the county where the child resides or may be found.*" (Emphasis supplied.) That section of the Child Custody Act, however, concerns venue rather than jurisdiction. *McDonald v McDonald,* 74 Mich App 119, 123, n 1; 253 NW2d 678 (1977). See also *Kubiak v Steen,* 51 Mich App 408, 412-413; 215 NW2d 195 (1974) (circuit court had jurisdiction under Child Custody Act even though child "was found" in another county); *Bert v Bert,* 154 Mich App 208, 213; 397 NW2d 270 (1986) (improper venue apparently unrelated to jurisdiction).

Even if venue was improper in Saginaw County, the circuit court had jurisdiction. However, venue was not improperly laid. Defendant's claim that

plaintiff lived in Tuscola County in 1980 is premised on plaintiff's vague and inconsistent testimony in 1989.

Plaintiff was quite confused about the dates she moved ("I'm not quite sure [if it] was January of '81 or '82 [that she moved to Saginaw County]"; "[I]t would be in January of '82, right?"; "Yes, I believe so, yes.") She also erroneously testified that the case was moved *from* Tuscola County *to* Saginaw County. Even defendant's counsel was prompted to respond, "You've indicated to me that you didn't move back into Saginaw County until after this case was settled." Moreover, defendant has not explained the complaint's listing of plaintiff's Saginaw address.

The credibility of witnesses is for the trier of fact in a paternity case. *Kenner v Watha,* 115 Mich App 521, 527; 323 NW2d 8 (1982), citing *Houfek v Shafer,* 7 Mich App 161, 172; 151 NW2d 385 (1967). The court properly could have found residence in Saginaw County on the basis of the address stated in the complaint and plaintiff's inconclusive hearing testimony. We therefore decline to disturb the lower court's ruling on this issue.

### II. MODIFICATION OF THE SUPPORT ORDER

Defendant principally complains about the lower court's modification of the 1981 child support order. He erroneously contends that the $5,000 maximum support provision of the settlement agreement barred an increased amount.

A child has an inherent right to parental support. *Ebel v Brown,* 70 Mich App 705, 709; 246 NW2d 379 (1976). A parent cannot release or compromise a child's claim in a paternity suit. *Beard v Skipper,* 182 Mich App 352, 353-354; 451

NW2d 614 (1990), citing *Faske v Bonanno,* 137 Mich App 202, 203-204; 357 NW2d 860 (1984). See also *Ydrogo v Ydrogo,* 332 Mich 530, 533; 52 NW2d 345 (1952) (parental agreement not to require child support would not bind the court in a subsequent support proceeding); *West v West,* 241 Mich 679, 683-684; 217 NW 924 (1928) (parties in a divorce action cannot deprive the court of power to decree a child's maintenance).

The Paternity Act permits a compromise agreement in lieu of a filiation order on narrow terms:

> An agreement or compromise made by the mother or child or by some authorized person on their behalf with the father concerning the support and education of the child shall be binding upon the mother and the child *only when the court having jurisdiction to compel support and education of the child shall have determined that adequate provision is reasonably secured by payment or otherwise and has approved the agreement or compromise.* [MCL 722.713(a); MSA 25.493(a). Emphasis supplied.]

In *Tuer v Niedoliwka,* 92 Mich App 694; 285 NW2d 424 (1979), the defendant agreed to pay $2,000 in exchange for dismissal without prejudice of an action seeking an order of filiation, but the agreement was not submitted for court approval. Although the defendant fully performed, the plaintiff later obtained a filiation order against him. This Court held:

> [T]he attempted settlement, to be binding on the mother and child, required the approval of a court having jurisdiction to compel support and education of the child.
>
> \* \* \*
>
> [W]e find an additional failure to comply with

[the act's] requirements, in that there was no determination by the trial judge in the first proceeding that adequate provision for the support and education of the child was secured by payment or otherwise. [*Id.* at 699-700.]

The putative father in *Van Laar v Rozema,* 94 Mich App 619; 288 NW2d 667 (1980), agreed to provide child support, but never actually admitted paternity. *Id.* at 621. This Court held that the judgment confirming the compromise agreement could be modified because the support agreement provided for support until the child reached eighteen, graduated from high school "or until further order of the court." *Id.* at 623.

From a policy standpoint, this Court has taken a dim view of agreements purporting to sign away the rights of a child, particularly when the result of such an agreement may be that the child becomes a public charge. . . . The legislative intent to allow compromise agreements for the support of illegitimate children only if adequate provision for the child is secured is evidenced from the requirements of MCL 722.713; MSA 25.493. [*Id.* at 624.]

Defendant relies heavily on *Hisaw v Hayes,* 133 Mich App 639; 350 NW2d 302 (1984). However, in *Hisaw,* the trial court approved a settlement agreement that barred modification of support. In this case, the court never approved the $5,000 maximum provision. The order itself also contemplated modification of defendant's obligations.

The award of child support rests in the sound discretion of the trial court. The court's exercise of that discretion is presumed to be correct. *Thompson v Merritt,* 192 Mich App 412, 416; 481 NW2d 735 (1991). The trial court properly exercised its discretion to award a retroactive increase in child

support. Even with a $412 monthly child support obligation, defendant, who earned nearly $40,000 a year, had a monthly surplus income of $269. His former $40 monthly obligations contributed to the child's becoming a public charge. Moreover, defendant obtained four lengthy adjournments without plaintiff's consent. Whether a party caused delay in the resolution of a petition is an important factor in determining the date on which any increased level of child support should become effective. *Cochran v Buffone*, 137 Mich App 761, 767; 359 NW2d 557 (1984). We see no abuse of discretion.

### III. PLAINTIFF'S REPRESENTATION

Defendant finally argues that neither the Saginaw County friend of the court nor its assistant prosecutor had the authority to represent plaintiff. We do not agree.

The circuit court had continuing jurisdiction over this matter because judgment had not been "completely satisfied." MCL 722.720; MSA 25.500. The friend of the court is an employee of the circuit court in the judicial circuit it serves. The duties of the office fall under the direction and supervision of the chief circuit judge. MCL 552.503(4), (5); MSA 25.176(3)(4), (5).

The Friend of the Court Act specifically requires:

> After a final judgment containing a child support order has been entered in a domestic relations matter, the office shall examine the records and conduct any other investigation considered necessary to determine whether the child support amount should be increased or decreased in view of . . . changed financial conditions . . .
>
> (a) If a child is being supported in whole or in

part by public assistance, not less than once each 2 years. [MCL 552.517(1); MSA 25.176(17)(1).]

Subsection 5 of § 17 defines "changed financial conditions" to mean "increases or decreases in the resources available to either party from any source." Subsection 4 of the same statute provides that "[t]he office *shall* petition the court for modification of the amount of a child support order if modification is determined to be necessary under subsection (1)." (Emphasis supplied.)

Once the friend of the court determined that the child was being supported by public assistance, and that the order was not yet fully satisfied, she was statutorily obligated to investigate defendant's "financial conditions." Finding changed financial conditions, she was equally obligated to petition for modification. Section 17 refers to a time "[a]fter a final judgment containing a child support order has been entered" without limitation. It was not intended to apply only to support orders entered after its effective date (July 1, 1983), as defendant appears to believe.

The assistant prosecutor's role is no less legitimate:

> If the county department of social services of the county in which the complainant mother resides first determines her to be eligible for public assistance . . . then the prosecuting attorney . . . shall represent the complainant mother in initiating and conducting the proceedings under this act. [MCL 722.714(3); MSA 25.494(3) (as amended, effective June 1, 1986).]

That the prosecutor must act if the mother is a resident of the county eligible for public assistance does not preclude his acting for another. In *Young v Jangula,* 176 Mich App 478, 479; 440 NW2d 642

(1989), this Court upheld a prosecutor's representation of the plaintiff in a paternity action. Because plaintiff has assigned her rights to the state, a prosecuting attorney properly represented the state's interests. That "[t]he complainant's attorney in the proceedings under the act represents the complainant rather than The People," 1 OAG, 1957, No 3020, pp 495, 497 (November 1, 1957), is not dispositive, because plaintiff has assigned the state her right to defendant's past-due obligation.

Affirmed.